IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                            ) | Criminal No. 3:18-cr-124–HEH-2 |
| ) | |
| JOHN CAMPBELL,          ) | |
| ) | |
| Petitioner.           ) | |

**MEMORANDUM OPINION**
(Denying 28 U.S.C. § 2255 Motion)

Petitioner John Campbell ("Campbell"), a federal inmate proceeding *pro se*, submitted this Motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (the "§ 2255 Motion," ECF No. 228). The Government has responded, asserting that Campbell's claims lack merit. (ECF No. 246.) Campbell filed a Reply. (ECF No. 251.) For the reasons set forth below, Campbell's § 2255 Motion will be denied.

### I.   PROCEDURAL HISTORY

#### A.   Indictment and Trial

On October 11, 2018, a grand jury charged Campbell with armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d) and 2 (Count One); using, carrying, and brandishing a firearm during and in relation to a crime of violence, to wit: armed bank robbery as charged in Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2 (Count Two); and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1)

(Count Three) (Indictment at 1–2, ECF No. 1.)[1] After a five-day trial, the jury found Campbell guilty of all three (3) counts. (Minute Entry at 1–2, ECF No. 92; Jury Verdict at 1–2, ECF No. 94.)

### B. Sentencing

Prior to sentencing, a Presentence Report ("PSR") was prepared. (ECF No. 104.) Campbell's Base Offense Level under Chapter Two of the United States Sentencing Guidelines ("USSG") was 20. (PSR ¶ 28.) Campbell received a two-level enhancement because "[t]he property of a financial institution or post office was taken." (*Id.* ¶ 29.) Therefore, Campbell's Total Offense Level was 22. (*Id.* ¶ 36.) Campbell's criminal history score was six (6), resulting in a Criminal History Category of III. (*Id.* ¶¶ 40–41.) Campbell's sentencing guideline range was 51 to 63 months for Counts One and Three, and 60 months to run consecutively for Count Two. (*Id.* ¶ 88.) Nevertheless, the statutory punishment for these offenses authorized up to 25 years of incarceration on Count One, up to ten (10) years of incarceration on Count Three, and a mandatory minimum sentence of five (5) years on Count Two, to run consecutively. (*Id.*) On April 22, 2019, the Court entered judgment against Campbell and sentenced him to a total of 156 months, comprised of 96 months on Count One, 60 months on Count Two to be served consecutively, and 56 months on Count Three to be served concurrently. (J. at 2, ECF No. 127.)

---

[1] The Court employs that pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the capitalization, spelling, punctuation, and spacing in quotations and omits emphasis from Campbell's submissions.

2

Campbell appealed. On April 2, 2021, the United States Court of Appeals for the Fourth Circuit affirmed the decision of this Court. (ECF No. 188.)

### C. The § 2255 Motion

On October 3, 2022, Campbell filed his § 2255 Motion. (Mot. at 1.) In his § 2255 Motion, Campbell raises the following skeletal claims for relief:

Claim One: Counsel rendered ineffective assistance because the "cell phone warrant was giv[en] after 8–9 months; illegal search and seizure." (*Id.* at 6.)

Claim Two: "Investigation related prejudice. Ineffective assistance of counsel." (*Id.* at 8.)

Claim Three: "Failure to put on a defense. Counsel was ineffective assistance." (*Id.* at 11.)

Campbell indicates under Claim Two and Three to "see" various trial transcript cites and his Memorandum in Support of his § 2255 Motion (ECF No. 228-1). (Mot. at 8, 11.) However, the Memorandum in Support only identifies two claims for relief and seems to collapse Claims Two and Three above into only one claim. (Mem. in Supp. at 3–8.) Nevertheless, the Court generously construes Campbell to argue the following expanded Claims Two and Three:[2]

Claim Two: Counsel rendered ineffective assistance by failing to investigate:
(a) "Officer Park Smith" because "the prosecution claim[ed] that Officer Smith [didn't] remember what happened" (*id.* at 4–5);
(b) "a possible suspect that was brought in the light by Docteur" (*id.* at 5); and,
(c) "cameras around car lot where the so-called stolen pickup truck (Black Ford F-150)" was stolen (*id.*).

---

[2] Campbell has not truly delineated his claims. Rather, he lists complaints that the Court attempts to reduce into claim format. To the extent that Campbell has any other claim lurking therein, the Court has reviewed the entire § 2255 Motion and finds it lacks merit.

3

> Claim Three: Counsel rendered ineffective assistance by "never buil[ding] a defense for . . . Campbell:"
> (a) and making a joke that "he is David and the Government is Goliath clearly showing that he was never giv[en] the resources to build a defense" (*id.* at 4); and,
> (b) because of a lack of evidence showing Campbell was guilty (*see id.* at 6).

## II.   INEFFECTIVE ASSISTANCE OF COUNSEL

### A.   Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

4

## B. Challenge to the Search Warrant (Claim One)

In Claim One, Campbell argues that counsel rendered ineffective assistance because the "cell phone warrant was giv[en] after 8–9 months; illegal search and seizure." (Mot. at 6.) Campbell argues that "counsel never argued that [his] phone was held for well over 9 months without a search warrant, this is a clear violation of [his] 4th Amendment right against illegal search and seizure." (Mem. in Supp. at 3.) The initial search warrant obtained the day of Campbell's arrest allowed the seizure of his phone as evidence, but it did not specify that the contents could be searched. (*See* ECF No. 28-3.) Later, an FBI agent obtained a search warrant allowing a search of the contents of the phone. (ECF No. 28-1.) Campbell takes issue with the delay in obtaining this second warrant. Beyond his mere assertion, Campbell fails to explain why this delay violated the Fourth Amendment.[3] Counsel cannot be faulted for failing to advance this

---

[3] Campbell cites *United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019), with little explanation, to show that the ten-month delay was unreasonable. However, in his Reply, Campbell specifically states that the Government is "trying to mislead (deceive) this Court by explaining so much of the *United States v. Pratt* case." (Reply at 4, ECF No. 251.) The Court fails to discern why Campbell cited *Pratt* if he did not intend for this case to support his argument.

In *Pratt*, officers seized Pratt's phone without a warrant, Pratt refused to consent to the seizure or provide a passcode, and then officers waited 31 days to obtain a warrant to search the contents of the phone without any great reason for the delay. *Pratt*, 915 F.3d at 270, 273. Pratt was not in custody during that time. *See id.* The Fourth Circuit found the delay unreasonable. *Id.* at 273. Notably, *Pratt* was decided several months *after* the suppression hearing in Campbell's case. Additionally, the facts are distinguishable. Campbell's phone was seized both pursuant to his arrest and pursuant to a valid state search warrant to seize the phone as evidence. Therefore, *Pratt* does not square with Campbell's case because it involved a warrantless seizure followed by a delay in obtaining a search warrant. *Cf. United States v. Brady*, 577 F. Supp. 3d 420, 427 (E.D. Va. Dec. 23, 2021) (explaining that *Pratt* "involved *warrantless* seizures followed by a delay in obtaining a warrant to search the seized items" in contrast to a phone seized pursuant to "a valid search warrant at the time of the initial seizure" that authorized "not only a seizure of all electronic devices, but also a search of their contents for evidence of the crime"). Campbell's phone was seized pursuant to a valid warrant. Then officers later obtained

5

argument and Campbell fails to demonstrate any prejudice. Claim One lacks merit and will be dismissed.

### B. Purported Failure to Investigate (Claim Two)

In Claim Two (a), Campbell contends that counsel rendered ineffective assistance by failing to investigate "Officer Park Smith" because "the prosecution claim[ed] that Officer Smith [didn't] remember what happened." (Mem. in Supp. at 4–5.) However, to prevail on his allegation that counsel conducted an inadequate investigation, Campbell must identify what an adequate investigation would have revealed. *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced." (citing *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990))). Campbell offers no further argument or factual support for this claim, or what investigating Officer Park's lack of memory would have revealed, and, for that reason alone, Claim Two (a) may be dismissed. *See Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it "stated only bald legal conclusions with no supporting factual allegations").

Although Campbell's claim is both vague and conclusory, the Court nevertheless attempts to dig deeper to discern Campbell's meaning. During trial, Lt. Brown testified that he followed the GPS tracker to Willis Lane where it stopped, and then set up at a church parking lot nearby. (Jan. 16, 2019 Tr. at 87, 89–91, ECF No. 145.) Other officers

---

a warrant to search its contents. Counsel reasonably eschewed raising the argument that the delay in obtaining a search warrant for the phone's contents was unreasonable.

arrived to set up a perimeter including officers who could see the back of Campbell's house on Willis Lane. (*Id.* at 92–93, 99.) Officer Park saw an individual come out of Campbell's house and drop something in the drum behind the house and conveyed this information over the radio. (*Id.* at 4–5.) Lt. Brown later learned it was Alhakka Campbell, John Campbell's cousin and co-defendant. (*Id.*) However, before trial, the Government spoke to Officer Park and "he did not recall that" and did not "recall much from that day at all." (*Id.* at 5.) Thus, the Government did not call Officer Park as a witness to testify during trial.

Campbell fails to explain, and the Court fails to discern why counsel should have investigated the fact that Officer Park did not remember much information about his surveillance of Campbell's back yard or what that investigation would have yielded. Thus, Campbell fails to demonstrate that counsel was deficient. Moreover, as Officer Park did not testify at trial, Campbell fails to demonstrate any prejudice.[4] Accordingly, Claim Two (a) lacks merit and will be dismissed.

---

[4] Although Campbell certainly does not argue anything this detailed or involved, the Court notes that counsel for Alhakka Campbell filed a motion to exclude hearsay testimony to exclude Lt. Brown from testifying that he heard over the radio from Officer Park, that someone had come out of the house and dropped a gun in a drum behind the house. (Jan. 16, 2019 Tr. at 3–4.) In response, the Government argued that the testimony was necessary to explain why officers were focused on the drums behind the house during the search. (*Id.* at 4–6.) The Court allowed the testimony solely for the purpose of showing why the area was searched, but not for the truth of the matter, and instructed the Government that they could not elicit testimony about *who* was observed dropping an item into the drum before the search. (*Id.* at 4–9.) After Lt. Brown testified that the surveillance officers saw someone leave the house, lift the lid on a barrel, place a bag in it, close the lid, and then went back into the house, the Court instructed the jury, "Ladies and gentleman, this is offered solely as - - this is not offered for the truth of the matter, but only to show you what information the lieutenant had as a predicate for what action he directed with his officers." (*Id.* at 99.) Thus, Campbell was not prejudiced in any way because the hearsay statement about who dropped the bag was not allowed.

In Claim Two (b), Campbell contends that counsel rendered ineffective assistance by failing to investigate "a possible suspect that was brought in the light by Docteur." (Mem. in Supp. at 5.) Campbell contends that "Mr. Docteur stated: 'that the voice was familiar.' What makes this person of interest, Ms. Thomas say the exact same thing." (*Id.*) In his Reply, Campbell merely adds that "counsel also fail to investigate possible suspect that Mr. Docteur or Ms. Thomas spoke of." (Reply at 5.) Again, Campbell offers no further argument or factual support for this claim. Such a conclusory allegation provides no basis for habeas relief. *Sanders*, 373 U.S. at 19. Moreover, to prevail on his allegation that counsel conducted an inadequate investigation, Campbell must identify what an adequate investigation would have revealed. *See Beaver*, 93 F.3d at 1195. Campbell fails to make this showing. Accordingly, Campbell demonstrates neither deficiency of counsel nor resulting prejudice, and Claim Two (b) will be dismissed.[5]

In Claim Two (c), Campbell contends that counsel rendered ineffective assistance by failing to investigate "cameras around [the] car lot where the so-called stolen pickup truck (Black Ford F-150)" was stolen. (Mem. in Supp. at 5). Campbell argues that:

> [C]ounsel was ineffective in not investigating the car lot for cameras or the surrounding businesses 'because the prosecution had things covered.' This is

---

[5] The Government supplies the argument, factual support, and background for this claim. However, it is Campbell's burden to show why he is entitled to relief. Nevertheless, as the Government explains, apparently, two of the bank employees, Jean Docteur and Natalie Thompson, testified that they believed that the voice of one of the robbers sounded like one of their regular customers, a businessman who owed Vision Auto. (Resp. in Opp'n at 17–18, ECF No. 246 (citations omitted).) However, both Docteur and Thompson explicitly testified that they did not actually think the regular customer was the robber. (*See id.* (citations omitted).) The Court fails to discern why, in light of the testimony of the employees, counsel should have investigated as a suspect, the regular customer of the bank, who was quite clearly not one of the robbers. Therefore, Campbell fails to demonstrate any deficiency of counsel or resulting prejudice.

8

> clearly a prejudice related investigation or cover up. Mr. Lenny Snead and Robert Whitaker who own the car lot testified in trial that they never seen the Campbells before, in fact the owners was interviewed by Detective Johnson. Trial counsel never thought to pursue the camera from the surrounding establishments. The owners of the car lot clearly stated that a tall man test drove the vehicle and stole the keys. Therefore, prosecution already have two suspects in custody, why do more work.

(*Id.* (citations and emphasis omitted).) Thus, it appears that Campbell faults counsel for failing to obtain camera footage which would have allegedly shown another individual stole the truck. Although Campbell is correct that law enforcement did not obtain video footage, he fails to show any deficiency of counsel or resulting prejudice.

First, despite Campbell's claim of an alleged prosecution cover up, the trial testimony did not support an inference that someone other than the Campbells stole the truck. The black Ford F150 pickup truck stolen from MW Auto Sales met the description of the truck that was used by the robbers in the bank robbery. (Jan. 16, 2019 Tr. at 345–49.) GPS trackers that were placed in the bags of money stolen from the bank showed that the robbers traveled to a dead end on Wilmer Avenue and officers found the stolen truck abandoned there. (Jan. 15, 2019 Tr. at 248–49, 268–69, ECF No. 144; Jan. 16, 2019 Tr. at 162–65.) The trackers continued to move to 5507 Willis Lane.[6] (Jan. 15, 2019 Tr. at 249–50, 268–69.) The stolen truck was later recovered by officers from Wilmer Avenue. (Jan. 16, 2019 Tr. at 165–66.)

Robert Whitaker, an employee of MW Auto Sales, testified that an individual test drove the black Ford F150 the day before the robbery. (*Id.* at 295–97.) Whitaker learned

---

[6] The trackers moved to 5507 Willis Lane, which was John Campbell's home, and stayed there until they were disabled. (Jan. 15, 2019 Tr. at 249–50, 260, 271–72.)

9

after the robbery occurred that the truck had been stolen from the lot in the hours leading up to the robbery. (*Id.* at 296–97, 349.) Whitaker told officers that, the night before, a customer took the keys to check out the truck, had them for about ten minutes, and then returned the keys to Whitaker. (*Id.* at 297.) Whitaker later learned there were two (2) sets of keys to the truck, but he was certain that the customer had returned the set of keys. (*Id.* at 297.) Whitaker testified that, "whatever keys I gave the customer the night before were brought back to me and hung on the board because they were there the next day." (*Id.* at 297.) Whitaker testified that neither defendant was the customer who looked at the truck the night before the robbery. (*Id.* at 299–301.)

Detective Kevin Johnson was the officer who responded to MW Auto Sales after the robbery to inquire about the stolen black Ford F150. (*Id.* at 350–51.) Both counsel for Alhakka Campbell and Campbell asked Detective Johnson about nearby businesses and whether he attempted to obtain surveillance videos to assist him in determining who stole the truck, and Detective Johnson indicated that he had not tried to obtain videos. (*Id.* at 356–57, 362.) Thus, counsel highlighted to the jury that police had not attempted to look for video footage from businesses surrounding MW Auto Sales after the truck was stolen. Campbell fails to explain, and the Court fails to discern what further counsel could have done to flag to the jury that police may not have conducted a thorough investigation into the stolen truck.[7] Instead, counsel attempted to instill doubt in the

---

[7] Despite Campbell's suggestion, it would have been foolish for counsel to push for officers to obtain video footage from the time the truck was stolen. More likely than not, any footage would have shown one or both of the Campbells stealing the truck which would have been damning evidence of their guilt if presented at trial.

10

jury's mind about who stole the truck and later tied that into his defense theory that officers had not conducted a thorough investigation generally, and because of that, the Government had not proved its case against Campbell. Campbell shows neither deficiency of counsel nor resulting prejudice, and Claim Two (c) will be dismissed.

C. **Failure to Build a Defense**

In Claim Three (a), Campbell argues that counsel rendered ineffective assistance by "never buil[ding] a defense for . . . Campbell" and making a joke that "he is David and the Government is Goliath, clearly showing that he never was giv[en] the resources to build a defense." (Mem. in Supp. at 4.) Campbell's contention that counsel failed to build a defense is completely belied by the record. With respect to counsel's statements about David and Goliath, these were made during closing argument and were part of counsel's strategy to elicit sympathy for Campbell when up against a well-funded and well-staffed prosecutor's office. This argument fit perfectly within counsel's defense theory, that despite its many resources, the Government nevertheless, failed to present sufficient evidence to show his client was guilty. Counsel stated:

> If you can't tell what this situation is; we have little David over here, and we have the force of the United States government over here – Goliath. You see all the people lined up here. You see all the computers and the staff running around. And John Campbell has one thing: Me.
> No computer, no fancy exhibits, no paralegal helping me out. That's what we have – David versus Goliath. And I point that out, and I'm going to tie that up later, and I will get to some of that negative evidence that I talked about in my opening.
> . . . .
> The reason we don't get the last word, the reason the government gets to come up here and they get the last word, is because they have that burden of proof, as Mr. Camden so eloquently explained. They have to present evidence. They have to prove things. We don't have to do anything. We

11

> don't even have to get up here and cross-examine anybody. We don't have to present witnesses or documents or exhibits. We don't have to do any of that. They have to do that – the burden of proof, which has been explained.
>
> . . . .
>
> Now, the Judge -- and the instructions are going to direct you, and you've heard that there's two types of evidence. There's direct evidence. If that videotape in the bank didn't have a mask on the suspects and you could identify who it was, that would be direct evidence.
>
> Circumstantial evidence, and the best way I can explain this is two ways: You have a series of dots that are connected a reasonable distance from each other. They lead to a reasonable conclusion. If you remove some of those dots, you don't reach that same conclusion. It's like putting a puzzle together. If you don't have some of the pieces to the puzzle, you can't tell what it is. That's circumstantial evidence.
>
> Another piece of evidence, the other type of evidence, I call it negative evidence: The things they don't have, the things they didn't find, and the things they didn't do and reasonably or expected to do.

(Jan. 18, 2019 Tr. at 165–67, ECF No. 147.) Counsel then thoroughly identified the weaknesses in the Government's case and drove home that despite its many resources, the Government still failed to establish Campbell's guilt beyond a reasonable doubt. (*See id.* at 167–201.) Counsel noted:

> Ladies and gentleman, you've heard the federal government in all its glory and power, and all its resources, and the things they didn't do in a circumstantial case. They should have to exclude all of these other things in order to use circumstantial evidence to connect all of those dots. And when those dots are not there, and you don't have a reasonable connection [] from one dot to another, then the case fails.
>
> You cannot go back there and speculate and say, well, I'm kind of. That's reasonable doubt. That's exactly what that is. And when you have doubt on doubt on doubt on doubt, that's a reasonable doubt. And that's what we've shown you.
>
> Now Mr. Gill gets to come up here one last time. He gets the last word to try and attack what I've said to you. When you go back into the jury room, think about whether he explains why the police didn't do these things, why the FBI didn't do these things. Where is that evidence? Do you need that evidence to make your decision? Would the answers to those questions that I presented to you cause you to make a different decision than what you might be thinking right now?

> And if you find yourself thinking that way, that's reasonable doubt, and that's when you have to come back and find John Campbell not guilty.

(*Id.* at 201–02.) Counsel also argued that Alhakka Campbell, Campbell's cousin and co-defendant, and another friend of his robbed the bank, and that Campbell was not with them. (*See, e.g., id.* at 172–77.) Therefore, counsel clearly developed and presented a defense for Campbell. Campbell's statements to the contrary are false. Campbell demonstrates no deficiency of counsel and no resulting prejudice. Therefore, Claim Three (a) will be dismissed.

In Claim Three (b), Campbell continues to take issue with the Government's purported lack of evidence and his contention that counsel failed to build a defense. Campbell argues that Counsel rendered ineffective assistance by "never buil[ding] a defense for . . . Campbell" because Campbell's DNA was not in the stolen truck, there was no evidence from a robbery in Campbell's house, the GPS tracker actually moved away from Campbell's house, there was differing testimony about paint on his shirt, "[n]or was the symbol on Mr. Campbell's jacket found in house the same as [the] bank robbers." (Mem. in Supp. at 6.) This appears, in essence, to be a challenge to the sufficiency of the evidence. The Fourth Circuit reviewed the sufficiency of the evidence on appeal, and "conclude[d] that the convictions are supported by evidence." (4th Cir. Op. at 9, ECF No. 187.) Thus, to the extent that Campbell attempts to argue once again that the lack of evidence he identifies shows that there was insufficient evidence to convict him, that is simply not the case.

13

To the extent that Campbell faults counsel with respect to what he perceives is a lack of evidence of his guilt, despite Campbell's contention, counsel questioned several police witnesses on these details and then flagged the missing or "negative" evidence to the jury in his closing arguments. (*See, e.g.*, Jan. 18, 2019 Tr. at 173–74, 185–88, 189–90, 199.) The jury nevertheless concluded that the evidence showed that Campbell was guilty. Campbell fails to explain what further he wished counsel to do. Thus, Campbell shows no deficiency of counsel or resulting prejudice. Claim Three (b) will be dismissed.

## III. CONCLUSION

For the foregoing reasons, Campbell's § 2255 Motion (ECF No. 228) will be denied. The action will be dismissed. A certificate of appealability will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: April 30, 2024
Richmond, Virginia